This was an action of detinue brought hy Alderson v. Biggers, for sundry slaves, in the County Court of Lunenburg.
At the trial of the cause, on the plea of non detinet, before any evidence had been heard on the part of the plaintiff, the defendant introduced a copy, attested by the clerk of Lunenburg Court, of a bill of sale from the plaintiff, conveying several of the slaves in question to a certain Joseph Smith; under a clause in whose last will and testament the defendant claimed them ; which copy was permitted by the Court to go as evidence to the jury — it was dated the 28th of December, 1784, attested by Tommy Biggers (the defendant himself) and Peggy Biggers, his wife, and recorded at Lunen-burg January Court, 1785, being proved by the oath of “one of the witnesses thereto;” but the certificate of the clerk does not mention which. The plaintiff filed a bill of exceptions to the Court’s opinion, and moreover offered parol testimony to prove-an implied verbal release by Joseph Smith, of the right claimed by him by virtue of the-said bill of sale; to the admission of which testimony the defendant objected, but the Court overruled the objection, “because the original deed was not produced.” The defendant thereupon *excepted to the opinion of the Court, and moreover demurred to all the plaintiff’s evidence; the substance of which was that, at sundry times, from the year 1789, to the-year 1795, Joseph Smith declared “that the negroes in question belonged to Alderson; that the bill of sale he had taken for them was worth nothing; that Alderson was addicted to drinking; that he owed about 201. and that the bill of sale was executed to-prevent the negroes from being taken to pay the said debt, being intended for the benefit of Rachel (meaning Alderson’s wife, who was Smith’s sister) and her children that William Cowan had threatened to make him sell them to pay himself, (the said Smith,) but that he did not know that Al-derson owed him one farthing ; for he had done a great deal of work for himself and his sons, and they had never had a settlement; but he hired the negroes to him for a blind, and that would stop all their mouths:” that Lydia, (one of the negroes,) and the rest, who were her children, had remained in the plaintiff’s possession, from the time when the bill of sale was executed, until the year 1794; and had been regularly listed to him in the books of the commissioners of the revenue from 1785 to 1794.
The above was all the evidence on the part of the plaintiff, and none was introduced by the defendant, except the aforesaid copy of the bill of sale. The demurrer being tendered, the plaintiff joined therein ; whereupon the Jury found a general and unconditional verdict for the plaintiff for the negroes in the declaration mentioned, stating their respective values at higher rates than those mentioned in the declaration, and 501. damages for detention. The demurrer was afterwards argued, and overruled by the Court, and judgment entered for the plaintiff; from which the defendant appealed to the District Court, where all the proceedings back to the joining of issue were reversed, without assigning any cause in the record for the reversal, and the suit retained for trial at the District Court bar. A verdict and judgment were entered for the plaintiff, from which Biggers appealed to this Court; where the appeal abated by his death, and was revived by his administrator.
Randolph and Stuart, for the appellant, made the following points:
1. That the County Court erred in admitting parol evidence, which went to the total destruction of the bill of sale; or to prove it to have been intended as a mortgage. *'2. That Alderson was estopped, in a Court of Law, from alleging anything in contradiction of his own deed; which being, moreover, executed with a *37 view to defraud creditors, ought to be binding on him; and should prevent him from obtaining relief even in a Court of Equity.
3. That the hiring of the negroes by Smith to Alderson, was an evidence that there was no adverse possession iri the latter, (for his possession was that of Smith’s,) and prevented Alderson from acquiring a title by length of possession.
4. That the price of the negroes having been fixed higher in the verdict than stated in the declaration, it could not be sustained. On this point the case of Custice and Posey, in the old general Court, was mentioned. (1)
Hay, Munford and Geo. K. Taylor for the appellee, contended, 1. That the County Court decided correctly in admitting the parol evidence to prove the release. 2. That the judgment on the demurrer was correctly pronounced in the plaintiff’s favour.
In support of the first point, they argued, that a man, who has executed a bill of sale or mortgage for slaves, may afterwards acquire a complete title to them without a deed, since slaves may be transferred by delivery only ; that the uninterrupted possession by the plaintiff for more than five 3'ears, and Smith’s acknowledgments of his right, were sufficient for the jury to presume a release or reconveyance;(a) and that the Court might even have instructed the Jury to presume a release, (b)
On the second point they insisted that by a demurrer to evidence, the defendant not only admits the facts stated, but every rational inference which a Jury might deduce from them;(c) that the Court therefore had a right to infer the release or reconveyance, as the Jury might have done; that the bill of sale having been executed to secure a debt from Alderson to Smith, who acknowledged that he had received payment, he could thereupon be a trustee *only, and could not set up the trust, even at common law, to defeat the claim of his cestui que trust, (d)
In answer to the second point made by the appellant’s counsel, they observed that estoppels are odious in law, and ought net to be encouraged; that they ought to be •regularly pleaded and not relied on by way of evidence ;(e) on the question of fraud, they said that the bill of sale was not executed by Alderson with a fraudulent intention ; that he did not owe at the time more than 201. except to Smith; that Smith might honestly have taken the bill of sale to secure himself; but that whatever his intentions were, it does not appear {hat Al-derson was accessary to any improper plan, there being no proof to that effect, except what resulted from Smith’s assertions; that if the bill of sale was a voluntary conveyance to prevent the property from being lost by the drinking and imprudence of Al-derson, it was not therefore void, since “every volunlary conveyance is not fraudulent, but, if there was a reasonable cause for making it, may be good even against “creditors;” (f) but if it be admittted that the bill of sale was fraudulent, the principle that a man cannot come into Court, claiming against a deed executed by himself with a fraudulent view, does not apply to this case, because Alderson relied on his length of possession and Smith’s acknowledgments; and Biggers, the defendant, cannot say the bill of sale was fraudulent, because he claims under it himself; that the principle moreover applies only to cases of equal guilt in both parties, not to those where fraud is not intended by the donor, but by the donee onlj’; that in such cases the donor may set aside the deed on the ground of the fraud and parol evidence is admissible to prove such fraud, (this being a matter extrinsic,) though not to change the terms of the deed, or to contradict it;(g) that, even if Alderson was particeps criminis, his remaining in possession gave him a right, which would have prevented Smith or Big-gers from recovering in an action against him, and that the wrong committed by Big-gers in taking possession of the slaves could not give him a better title than he had before.
In answer to the third point, they contended that, in the County Court record, there was no proof of the hiring of the slaves to Alderson but Smith’s own assertions; and, as to the fourth point, that the difference between the prices stated in the declaration, and those found by the Jury, is unimportant; that the plaintiff could not fix those ^prices in his declaration, but this was afterwards to be done by the jury: and, where a suit is long depending, the values of young negroes will necessarily greatly increase by the time of the verdict; that 10 Cc. Rep. 117 b. (h) states, that in detinue the jury may give greater damages than are laid in the declaration, because the declaration continues, and the damages sustained by the plaintiff must be increased during the pendency of the suit; the reason of which rule applies to this case; that it is sufficient that the identity of the slaves, mentioned in the verdict, with those in the *38 declaration, be ascertained(a) — and that the jury here had found for the plaintiff “the slaves in the declaration mentioned,” stating their names, which exactly correspond.
Randolph, in reply, cited Meres v. Ansel, 3 Wils. 275, to shew that parol evidence cannot be admitted to annul a deed on the ground *hat it was invalid in its origin, or became so by matter subsequent. If the deed was intended as a mortgage, or trust, it must appear so upon its face. The case from 1 Esp. 223, relates only to bonds, which, in their nature are defeazable, but not to absolute deeds; and evidence cannot be adduced to convert the latter into the former, (b) To be like the present case, it must be shewn that to an absolute bond, some condition not specified on the face of it may be annexed; but was such proof ever admitted at law?(c) It is said that a release may be inferred, and various instances of similar presumptions have been mentioned ; but they all presupposed the existence of a trust. The Court improperly judged of the weight of evidence, by deciding that there was an implied parol release. Even a writing, to operate as such, must be so expressed: it cannot be implied; nor can the loose conversations of Smith supply its place. If they prove any thing, it is that Alderson held as trustee for his own wife and children, and therefore cannot avail himself of the act of limitation.
The various authorities relative to estop-pels apply to cases only where the plaintiff, having an estoppel against the defendant, had failed to plead it; and gone to trial on the general issue. In such cases the plaintiff could not rely on the estoppel, as he had not pleaded it, and parol evidence was admissible in opposition to it; but no authority can be produced, which renders it necessary for the defendant to plead specially an estoppel. In this case, if he had pleaded it, and the plaintiff had re-plied “per fraudem,” *the defendant might have demurred; because the plaintiff was' barred by his own solemn deed.(d)
He also adduced two new points, viz. 1. That the verdict was absolute, and not conditional, as it ought to have been, upon a demurrer to evidence; and, 2. That the Jury had found the prices of the negroes, and damages for their detention, without any evidence before them.
Hay, as to the two new points, was about to argue the first, when it was relinquished by Mr. Randolph, who said he admitted, that on a demurrer to evidence, the verdict is necessarily to be considered as conditional. On the second, Hay observed that there was evidence stated in the demurrer, from which the jury might have inferred the values of the slaves, and estimated the damages for their detention. The commissioners’ books proved their ages, and several witnesses stated that they were young and likely. Besides, it was usual for Juries to find such a value as would compel the delivery of- the specific thing, but not to estimate it with as much accuracy as they would in case of a purchase. The time when Alderson’s possession ceased, (viz. after Smith’s death, in 1795,) appeared in evidence; and, therefore, the jury were enabled to calculate their profits, and ascertain the damages for their detention.
Curia advisare vult.
Tuesday, October 21. The Judges delivered their opinions.
JUDGE TUCKER.
The sole difficulty in this case seems td be attributable to an irregularity on the part of the defendant, in the outset of the trial in the County Court.' — without waiting to hear the plaintiff’s evidence upon the plea of non detinet, which was the general issue in the cause, he first obtrudes upon the Court his own; viz. a copy of a deed made to one Smith, (under whose will he claims the negroes,) in 1874, to which himself and his wife were the only subscribing witnesses; and then moves the Court to reject the plaintiff’s evidence of an uninterrupted possession of the slaves for twelve years before the death of Smith, who never appears to have been in possession of them. The plaintiff has an undoubted right, upon the general issue, to prefer his evidence first; then the defendant’s is to be heard in avoidance of it; and if the plaintiff can offer anything consistent with the rules of law to rebut it, he is then to be permitted to do so. Had this course been pursued, the evidence would have stood thus.
*The plaintiff proved an uninterrupted possession of the slaves in himself, from 1784 to 1795. To repel this, the defendant produces a copy of an absolute bill of sale for the slaves made by the plaintiff to Smith, (under whom he claims,) in consideration of 1501. in hand paid; which had been proved and recorded in 1784: to rebut which, the plaintiff offers viva voce testimony, that Smith had, on divers occasions, declared he had no title to the negroes; which was objected to, but admitted by the Court, because the original deed was not produced in Court. After-wards, the defendant demurs to the evidence, and thus brings into view of this court the evidence objected to, which is not such as it had been described in the bill of exceptions. If this course had been pursued, there could have been little doubt in the breasts, either of the Jury, had the cause been left to them, or of the Court, upon the demurrer. Eor the Jury would have been possessed of the material parts of the pl'aintiff’s evidence; viz. his long and uninterrupted possession of the slaves during the life of Smith; and the only point for their consideration would have been, whether they ought not to presume a re-transfer and sale of the negroes to the plaintiff, inconsequence of such possession, notwithstanding a copy of an old deed recorded twelve years before; the original not being produced, ncr proved to have been, lost, (which ought to have been done, before admitting the copy, when objected to,). and might therefore be presumed, upon the circumstances shew-n in evidence, to *39 have been delivered up to the plaintiff, or cancelled. No deed is necessary in case of a re-transfer and sale, where possession accompanies the transfer. The Jury, therefore, might hate concluded, upon the evidence before them, that such a re-transfer and sale actually took place. And it is now settled, that the Court may draw the same conclusions upon a demurrer to evidence, which admits the truth, but denies the sufficiency of the evidence to maintain the issue on the part of the plaintiff.
Had there been no demurrer to evidence, I should have thought the County Court erred in admitting the evidence stated in the bill of exceptions to have been offered by the plaintiff. But the whole evidence, being inserted in the demurrer, appears different from the description of it, (lor it is not stated verbatim,) in the bill of exceptions : and by the demurrer, the consideration of the evidence objected to was drawn from the Jury to the Court, who might disregard what was impertinent to the ffissue, or otherwise inadmissible; which a Jury, perhaps, would not. The error, if any, was, therefore, cured by the demurrer; which must be considered as a waiver of the bill of exceptions, as to the evidence objected to.
Upon considering the evidence stated in the demurrer in this manner, I have no difficulty in saying the County Court decided upon it properly, and that the judgment of the District Court reversing that decision was erroneous, and ought to be reversed, and the judgment of the County Court affirmed.
JUDGE) CARRINGTON.
I am of opinion, that the County Court decided properly upon the demurrer to evidence; of course, that its judgment upon the verdict of the Jury was regular. The defendant did not move for a new trial, but contented himself with an appeal to the District Court. That Court reversed the judgment, without stating any reason for so doing; and it is presumable they did so, because the record furnished none.
The objection that the slaves were valued higher by the Jury than the price laid in the declaration, is no error. If the plaintiff had stated a higher value than the real worth, that ought not to have governed the Jury. They were to fix the value, at the time of their verdict, as it appeared from the evidence before them. In the case of Taff v. Irby, before the General Court, in March term, 1779, no value was laid: the exception was taken, and the case was fully argued: the Court determined the omission was immaterial, and gave judgment upon the Jury’s verdict. I now consider the value laid in the declaration, or even if there had been no value laid, as matters of no importance.
I am of opinion that the judgment and proceedings of the District Court ought to be reversed, and that of the County Court affirmed.
JUDGE) LYONS concurring, judgment was entered accordingly.

 The case of Custice & Posey, was said to have been this. In detinue for a horse and three cows, the jury found a verdict for the horse, at a price higher than that stated in the declaration, and for two of the cows, omitting the third. On the argument of the cause in the old .general Court, two points were insisted on; first, the variance between the declaration and verdict as to the price of the horse, and. secón dijo the insufficiency of the verdict in not finding upon the whole issue. But the Court of Appeals, in their decision of the case of Butler v. Parks. (1 wash. 76.) referring to the case of Custice & Posey, seem to consider it as ha v* nit been determined on the second point only; that is, the insufficiency of the verdict, no notice being taken of the variance between the declaration and verdict.— Note in Original Edition.

 Cowp. 46, per Bohd MAN.si'iELDin Goodtitle, ex-dem. Hart v. Knott, Doug. 72:2, S. P. per Im. Maxs-jpibIíI) in Doe. lessee of Gibbons v. Pott and others. Esp. N. P. 457, 458 ; Cowp. 104; Mayor of Kingston upon Hull y. Horner: Ibid. 014, Eldridge v. Knott, and others; Ibid. 217; Doe, ex. dem. Pishar and wife, &c. y. Prosser. See also on the doctrine of presumptions, Peak’s L. Et. 3d edit. p. 20-25.

 7 Term Rep. 2 Doe, on dem.; Bowerman v. .Sybourn.

Co) SWash. 203, Stephens v. White.

 CoWp. Doug, and Esp. supra.

 Co. Lilt. 227 a.; Hob. 207; Speake v. Richards, 10 Vin. 415, 423, 453. 454, 482.

 13 Vin. Abr. 530, 531, pl. 6, Mod. 119, Lord Tenham v. Mullins.

 Esp. N. P. 223, cites Collins v. Blantern, 2 Wils. 341. 347, &c.

 Pilford’s case.

 3 Tuck. Bl. 152.

 1 Term Rep. 619-621, winch, v. Keely.

 wash. 14; Ross v. Norveil; Day’s Cases in Error. 139, Washburn v. Merrills, S. P.

a) Cowp. 600. 601, per Loan in Good-title, ex dem. Edwards v. Bailey.